UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ERIN WARE, | Case No. 3:22-cv-00037-ART-CSD |
| Plaintiff, | ORDER |
| v. | |
| M. SULLIVAN, *et al.*, | |
| Defendants. | |

Plaintiff Erin Ware ("Ware"), who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an Application to Proceed in forma pauperis and a Motion for a Preliminary Injunction. (ECF Nos. 1-1, 4, 7). The Court screened Ware's Complaint, allowed Ware's claims of deliberate indifference to a serious medical need to proceed against Defendants Dr. Naughton, Sullivan, Richard, Flores, and Keast, (collectively, "Defendants") and dismissed Defendant Minev from the action without prejudice. (ECF No. 8 at 10).

Pending before the Court is Ware's Motion for Preliminary Injunction (ECF No. 7) and Defendants' Motion for Leave to File Exhibits Under Seal (ECF No. 13). For the reasons stated below, the Court denies Ware's Motion for a Preliminary Injunction (ECF No. 7) and grants Defendants' Motion for Leave to File Exhibits Under Seal (ECF No. 13).

**I. BACKGROUND**

In his Complaint, Ware sues multiple defendants for events that took place while Ware was incarcerated at Northern Nevada Correctional Center ("NNCC"). (ECF No. 1-1 at 1). Plaintiff sues Defendants M. Sullivan, D. Richard, M. Minev, Leahloni Flores, John Keast, and Doctor Naughton. (*Id.* at 2). Plaintiff brings two counts and seeks monetary and injunctive relief. (*Id.* at 4-8).

Ware alleges that Defendants learned Ware had two different internal blood infections "with 60-65% vegetation on the mitral valve" on September 19, 2020. (*Id.* at 8-9). Despite extreme pain and multiple attempts to "man down" Ware was not sent to the hospital until September 21, 2020, when a nurse reviewed Ware's results and ordered him transferred to the hospital for fear of losing her medical license. (*Id.* at 10). Ware stayed in the hospital for 30 days receiving intravenous antibiotics. (*Id.*) Ware was prescribed two oral antibiotics at the hospital and told he would need to take them for the rest of his life by an infectious disease specialist at the hospital, Dr. Swarts. (*Id.* at 11-12). When Ware was discharged, he was given a 30-day supply of the antibiotics. (*Id.*) After that supply ran out, Ware alleges that Dr. Naughten refused to refill the antibiotics. (*Id.*) Other defendants denied Ware's subsequent grievances to obtain the antibiotics. (*Id.*) Approximately one year later, Ware was given another supply of the antibiotics. (ECF No. 7 at 4). In his Complaint, Ware prays for "release from the NDOC on house arrest" to obtain medical care, monetary damages, and attorneys' fees. (ECF No. 1-1 at 18).

Ware brings a Motion for Preliminary Injunction[1] asking this Court to order the Nevada Department of Corrections ("NDOC") to allow Ware to participate in NDOC's 298 Compassionate Release Program.[2] (ECF No. 7 at 8). Ware believes

---

[1] Ware's Motion for Preliminary Injunction is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) or its progeny because Ware neither contests the duration of his sentence nor its legality. *See, e.g.,* Thorton *v. Brown*, 757 F.3d 834, 840-45 (9th Cir. 2013) (finding *Heck* did not bar an action where the plaintiff challenged conditions of his parole because the challenge was to a discretionary decision of the state department of corrections and rehabilitation that would not affect the plaintiff's court-imposed prison term, rather than a decision of a state court); *Taylor v. United States Prob. Off.*, 409 F.3d 426, 429-30 (D.C. Cir. 2005) (finding *Heck* did not bar an action where plaintiff contested his reincarceration after being placed in a halfway house); *McBride v. Cahoone*, 820 F. Supp. 2d 623, 632-33 (E.D. Pa. 2011) (finding same).

[2] Defendants argue that this Court may not consider Ware's Motion for Preliminary Injunction because he did not plead facts indicating he attempted to

he could obtain a kidney transplant and other medical care if he were placed on house arrest under the 298 program to serve the remainder of his sentence, and argues that kidney transplants are unavailable to those incarcerated by the NDOC. (*Id.* at 7).

Defendants allege that Ware is conspiring with an outside person to delay his dialysis treatment in the hope of receiving compassionate release. (ECF No. 12 at 3).

**II. LEGAL STANDARD**

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

A plaintiff who seeks a mandatory injunction—one that goes beyond simply

---

exhaust the State process for compassionate release. They are mistaken. *Patsy v. Bd. of Regents*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies."); *Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See also Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) (noting that, generally, exhaustion is not a prerequisite to an action under § 1983, but explaining that the Prison Litigation Reform Act created an exhaustion requirement for suits brought by prisoners under 42 U.S.C. § 1983 with respect to prison conditions).

maintaining the status quo during litigation—bears a "doubly demanding" burden: "she must establish that the law and facts clearly favor her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Id.* (internal quotations omitted).

Finally, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) ("Pacific Radiation"). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims in the underlying complaint itself." *Id.* The necessary connection is satisfied "where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

### III.  DISCUSSION

Here, Ware has not satisfied the *Winter* factors as described by the Supreme Court in *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008) and elaborated on in *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). For this reason, the Court denies Ware's Motion for Preliminary Injunction. (ECF No. 7).

**A. Likelihood of Success on the Merits**

Here, Ware requests a mandatory injunction which would command Defendants to take affirmative action (releasing Ware on house arrest) that would change the status quo. In the Ninth Circuit a plaintiff seeking a mandatory injunction "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in

original). Ware has not demonstrated the law clearly favors his position.

Here, even if Ware eventually demonstrates that that Defendants in this action showed a deliberate indifference to his serious medical needs by delaying his transport to the hospital and denying him a course of antibiotics recommended by another physician, the law does not clearly favor Ware because a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (quoting *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc)). Instead, Ware must demonstrate that the treatment he received "was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk" to his health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). Though Ware's deliberate indifference claim is cognizable under this standard, the law does not clearly favor Ware.

**B. Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief**

Ware has not shown he will suffer irreparable injury if his Motion for Preliminary Injunction is not granted. The Ninth Circuit "has ruled that '[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)).

While Ware appears to have been provided the antibiotics he was initially denied a year after he first requested them, (ECF No. 7 at 4), Ware argues that he cannot obtain a kidney transplant while incarcerated because he believes "state institutions do not allow that operation" as it could result in the death of the

inmate.³ (ECF No. 7 at 6).

While Ware has alleged that he needs a kidney transplant and that it is unavailable to those incarcerated by the NDOC, he has neither presented evidence that kidney transplants are unavailable to inmates, nor shown that he will incur an "immediate threatened injury" without a kidney transplant. Additionally, Ware has neither pointed to any medical records recommending a kidney transplant, nor shown that Defendants having allegedly delayed Ware's transfer to a hospital and failure to prescribe antibiotics for a year created the alleged need for a kidney transplant. *See Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) ("'[I]njunctive relief . . . must be tailored to remedy the *specific harm alleged.* An overb[roa]d injunction is an abuse of discretion.'") (emphasis in original) (quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)); 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.").

Therefore, under Ninth Circuit precedent, Ware has not shown that he is likely to suffer irreparable harm in the absence of preliminary relief.

**C. Balance of Equities and Public Interest**

Turning to the equities, Ware requests a mandatory injunction which would command Defendants to take affirmative action (releasing Ware on house arrest) that would change the status quo.

"The third and fourth factors of the preliminary-injunction test—balance of

---

³ It does not appear NDOC regulations prohibit inmates from receiving organ transplants as Ware alleges. The Court takes judicial notice of NDOC Administrative Regulation 659 "Inmate Organ and Blood Donation" which provides that "The Department will consider voluntary organ or tissue donations for transplantation available to inmates." AR 659.01; *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

6

equities and public interest—merge into one inquiry when the government opposes a preliminary injunction." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). "The 'public interest' mostly concerns the injunction's 'impact on nonparties rather than parties.'" *Id.* (quoting *Bernhardt v. L.A. Cnty.*, 339 F.33d 920, 931 (9th Cir. 2003)).

As to Ware's request for a mandatory injunction, the Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (internal quotations omitted). Here, Defendants have raised the possibility this is a "doubtful" case via an affidavit of an employee of NDOC, Ron Abeloe. (ECF No. 16-3). Abeloe attests that he listened to Ware's phone calls at the direction of NDOC's Chaplain. (*Id.* at 2). Abeloe contends that Ware "indicated that he was refusing his dialysis treatments to make himself sick and require hospitalization" and "indicated that if he were sicker, he could move for a compassionate release." (*Id.*) Although the Defendants have not submitted any recordings of these calls to substantiate these allegations, the Court finds that at this time Abeloe's affidavit tips the equities away from Ware in the context of his Motion for Preliminary Injunction. (ECF No. 7).

Next, evaluating the public interest, Ware argues that his proposed injunction is in the public interest because "[i]t is always in the public's best interest for inmates to receive appropriate and proper medical care" and because it is also in the public's interest that "inmates do not die of blood infections and dialysis complications. . . ." (ECF No. 7 at 7).

Ware is correct that ensuring respect for inmates' constitutional rights is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (citation omitted); *Preminger v. Principi*, 422 F.3d 815, 826

7

(9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). With that said, on balance this factor still favors Defendants based on the evidence presented in Abeloe's affidavit and in light of Ware's request to serve out his sentence at home which necessarily implicates public safety. *See* 18 U.S.C. § 3626(a)(2) ("The court shall give substantial weight to any adverse impact on public safety. . . .").

**IV. CONCLUSION**

It is ordered that, because Ware cannot demonstrate that his Motion for Preliminary Injunction (ECF No. 7) satisfies the *Winter* factors it is DENIED.

It is further ordered that Defendants' Motion for Leave to File Document Under Seal (ECF No. 13) is GRANTED.

It is so ordered.

DATED THIS 20th day of March 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE