1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ERIN WARE,

Plaintiff,

v.

M. SULLIVAN, *et al.*,

Defendants.

Case No. 3:22-cv-00037-ART-CSD

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

10    *Pro se* Plaintiff Erin Ware ("Ware") brings this action under 42 U.S.C. § 1983
11  against Defendants Dr. Naughton, Sullivan, Richard, Flores, and Keast
12  (collectively, "Defendants") for two claims of deliberate indifference to a serious
13  medical need in violation of the Eighth Amendment.

14    Before the Court is Defendants' motion for summary judgment (ECF No.
15  37), Plaintiff's response (ECF No. 44),[1] and Defendants' reply (ECF No. 45).
16  Magistrate Judge Craig S. Denney has issued a Report and Recommendation
17  ("R&R") recommending that Defendants' motion be granted. (ECF No. 57,
18  originally filed as ECF No 55.)

19    Also before the court are several motions filed by Ware concerning requests
20  for appointment of counsel and review of medical records. Following Judge
21  Denney's R&R, Ware filed a motion to stay the case pending an order on his

22
23
24
25
26
27
28

---

[1] As noted in the R&R, ECF No. 44 is titled "Plaintiff's Motion for Summary Judgment." However, because the deadline for filing dispositive motions has passed, the Court construes this as a response to Defendants' motion for summary judgment.

motion to appoint counsel. (ECF No. 56.) Judge Denney then denied Ware's motion to appoint counsel. (ECF No. 58.) Plaintiff then filed an objection to Judge Denney's prior order denying Plaintiff's motion to review medical records. (ECF No. 59, ECF No. 52.) Finally, Plaintiff filed a motion to reconsider the appointment of counsel. (ECF No. 60.)

For the reasons stated below, the Court grants in part and denies in part Defendants' motion for summary judgment; denies Plaintiff's motion to stay the case as moot; denies without prejudice Plaintiff's motion to review medical records in his cell; and grants Plaintiff's motion for appointment of counsel.

## I. BACKGROUND

### A. FACTS

Ware is an inmate in custody of the Nevada Department of Corrections ("NDOC"), proceeding *pro se* with this 42 U.S.C. § 1983 action. (ECF No. 9.) The events giving rise to this action took place while Ware was housed at Northern Nevada Correctional Center ("NNCC"). (*Id.*) After screening the complaint, the Court allowed Ware to proceed with two claims: a claim against Dr. Naughton and Keast for alleged delay in sending Ware to the hospital; and a claim against Dr. Naughton, Sullivan, Richard, and Flores for alleged refusal to provide Ware with oral antibiotics. (ECF No. 8.)

Ware claims that on September 18, 2020, while receiving dialysis, he complained of chest pain and asked the dialysis nurse to take blood cultures. (ECF No. 1-1 at 8.) After he completed dialysis, the nurse drew blood to use for blood cultures. (*Id.*) Medical records confirm that blood cultures ordered by Dr. Naughton were collected on September 18. (ECF No. 39-1 at 2.) Later that day, Ware claims that he was experiencing extreme chest pain so he "manned down" and walked to the infirmary to request medical treatment. (ECF No. 1-1 at 8.) Dr.

2

Naughton said there was nothing that could be done until the blood cultures were completed; refused to provide Ware pain medication; and told Ware to drink water and stay hydrated. (*Id.*)

Ware claims that the blood cultures were returned on September 19, showing that Ware had two internal blood infections "with 60-65% vegetation on the mitral valve." (*Id.*) Because Ware was still in extreme pain, he "manned down" for a second time. (*Id.* at 8-9.) A nurse checked his vitals and told him he was fine and should return to his cell. (*Id.* at 9.) According to medical records, the blood cultures were "received" on September 19, "entered" on September 18, and "reported" on September 20 and 21. (ECF No. 39-1 at 2-3.) Defendants claim that results were reported to NDOC on September 20 or September 21. (ECF No. 37 at 3, 7, 8.)

Ware claims that he "manned down" for a third time on September 20 and was again told that he was fine. (ECF No. 1-1 at 9).

On September 21, Ware claims that he was so weak that he had to be brought to dialysis in a wheelchair. (*Id.*) During dialysis, Ware spoke to Keast and told him he was in significant pain and that the blood culture showed he had two blood infections. (*Id.*) Keast responded that Ware looked fine and that the cultures might be wrong if someone had tampered with them. (*Id.*) Keast told Ware they would have to redo the cultures, and that Ware was just trying to go to the hospital to get better food. (*Id.*) Keast claims that this conversation did not occur. (ECF No. 37-3 at 2.)

Later that night, Ware claims that he "manned down" for a fourth time. (ECF No. 1-1 at 10.) A nurse said that Ware looked horrible and had him taken to the infirmary on a medical cart. (*Id.*) Dr. Naughton ordered that Ware stay in the infirmary for 24 hours for observation. (*Id.*) Ware told the nurse that he had

3

seen his lab results and he had two blood infections. (*Id.*) The nurse reviewed his chart and had Plaintiff sent to the hospital. (*Id.* at 10-11.) Dr. Naughton's declaration does not mention this conversation. (ECF No. 37-6.)

The Court has not seen records confirming the first three "man downs," but records confirm what Ware claims was the fourth "man down" at 6:10 p.m. on September 21. (ECF No. 39-2 at 2, ECF No. 1-1 at 10.) Defendants claim that this was the first "man down." (ECF No. 37 at 8.) The evaluation, which was completed at 7:20 p.m., states that Ware was "laying in bed reporting 'I haven't been feeling well for days and they told me I have an infection in my blood and now my whole body is hurting.'" (*Id.*) The "plan" states: "On call MD notified of assessment, order received for transfer to [Carson Tahoe Hospital] for further evaluation." (*Id.*)

Ware was transferred to the hospital on September 21. (ECF No. 37 at 3, ECF No. 39-3 at 2.) Ware claims that once he reached the hospital, Dr Swarts (an infectious disease specialist who has since passed away), told Ware he was lucky to be alive because the infection had reached his heart. (ECF Nos. 1-1 at 11, 60 at 2.) Dr. Swarts said that it takes time for that to happen and asked why the prison had waited to send him to the hospital. (ECF No. 1-1 at 11.) The Court has not seen any record of the initial evaluation by Dr. Swarts.

Ware stayed in the hospital for 30 days, receiving three different intravenous (IV) antibiotics daily. (*Id.*) Defendants have provided a "Progress Note" written by Dr. Swarts on October 19, which recommended continuation of IV antibiotics (ceftriaxone daptomycin and ampicillin) until November 25, 2020, and recommended considering prophylactic oral antibiotics after November 25 to prevent groin catheter infection. (ECF No. 39-4 at 2.)

Ware claims that Dr. Swarts told him that, after the conclusion of the IV

4

1    antibiotics, he would have to take two oral antibiotics daily for the rest of his life.

2    (ECF No. 1-1 at 12.) When Ware returned to the prison, he was given a 30-day

3    supply of the two oral antibiotics. (*Id.*) Ware claims that after the initial supply

4    ran out, he requested a refill, but Dr. Naughton refused his request. (*Id.*) Ware

5    alleges that he filed grievances over the lack of oral antibiotics, but medical staff

6    Sullivan, Richard, and Flores denied his grievances. (*Id.*) Medical records show

7    that Ware was provided with IV antibiotics until November 25 and a 6-week

8    supply of two oral antibiotics to keep on his person ("KOP"). (ECF No. 37 at 3-4,

9    ECF No. 39-4, ECF No. 39-5.)

10       On October 22, 2020, Ware filed a grievance regarding the delay in sending

11   him to the hospital. (ECF No. 37-1 at 3.) Sullivan denied the grievance, stating

12   that: "on 9/18/2020 blood cultures were taken. Lab Corp did not report the labs

13   to NNCC until 9/22/2020,[2] as it takes several days for the labs to be processed.

14   You were sent to the ER on 9/21/2020. Since return from the ER you have been

15   seen by the provider, orders have been written and are being followed." (*Id.* at 2.)

16   On November 12, 2020, Ware filed a first level grievance. (*Id.* at 9-10.) Richard

17   denied the grievance, explaining that a blood culture test takes "2-10 days" and

18   repeating the assertion that Ware's test was "drawn on 9/18/20 and results were

19   available on 9/22/20." (*Id.* at 8.) On November 20, Ware filed a second level

20   grievance, which Minev "resolved" because Ware had provided "no additional

21   information for consideration." (*Id.* at 12-15.)

22       Ware claims that the delay caused him to "suffer with pain needlessly for

23

24   _____

25

26   [2] This date is inconsistent with the medical records. (ECF No. 39-1 at 2-3.)

27                                          5

28

days, and allowed the infection to grow, needing 31 days in the hospital to cure it." (ECF No. 44 at 8.) Ware also claims that he still suffers from chest pain because of the damage caused by the delay in sending him to the hospital. (ECF No. 1-1 at 14.)

### B. PROCEDURAL HISTORY

In October 2023, Defendants filed a motion for summary judgment, seeking to dismiss both claims because: (1) there is no evidence of deliberate indifference; (2) Keast, Sullivan, Richard and Flores did not personally participate in the alleged violation of the Eighth Amendment; and (3) Defendants are entitled to qualified immunity. (ECF No. 37.)

Judge Denney issued an R&R recommending that Defendants' motion for summary judgment be granted. Neither party filed an objection to the R&R. Ware filed motions to reconsider Judge Denney's prior orders denying appointment of counsel and denying in-cell review of medical records, which the Court addresses in Section III below.

### II. SUMMARY JUDGMENT

### A. REVIEW OF REPORT AND RECOMMENDATIONS

Under the Federal Magistrates Act, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

1

### B. LEGAL STANDARD

A party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). However, if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). When the nonmoving party bears the burden of proving the

7

claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25.

If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, they must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## C. EIGHTH AMENDMENT: INADEQUATE MEDICAL CARE

The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to "serious medical needs." *Id.* at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual

8

punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

Ninth Circuit cases "make clear that prison officials violate the Constitution when they 'deny, delay or intentionally interfere' with needed medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); *see also Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); *Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner generally must show that the delay led to further injury. See *Hallett*, 296 F.3d at 745–46; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

The Ninth Circuit has held that four-hour delay in providing showers and medical attention to inmates who had been suffering from harmful effects from pepper spray vapors was sufficient to deny summary judgment. *Clement*, 298 F.3d at 905–06. In *Blackmore v. Kalamazoo County*, the Sixth Circuit found that a two-day delay in transport to hospital after the inmate was showing signs of appendicitis presented sufficient evidence to reverse a grant of summary judgment. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004). Similarly, a three-day delay in transportation to hospital for a detainee who had not taken what an officer believed was her heart medication and who was displaying "classic" signs of an impending heart attack constituted deliberate indifference. *Estate of Carter v. Detroit*, 408 F.3d 305, 312–13 (6th Cir. 2005). Relying in part on that case, the Ninth Circuit found that a similar delay of several

hours where the plaintiff was displaying symptoms of a heart attack could constitute deliberate indifference. *Russell v. Lumitap*, 31 F.4th 729, 743 (9th Cir. 2022).

### D. QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks omitted).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). Under this analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (citation and internal quotation marks omitted). First, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* Courts exercise "discretion in deciding which of the two prongs of

1   the qualified immunity analysis should be addressed first in light of the
2   circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

3       "To be clearly established, a right must be sufficiently clear that every
4   reasonable official would have understood that what he is doing violates that
5   right." *Taylor v. Barkes*, 575 U.S. 822 (2015) (per curiam). "[A] court must define
6   the right at issue with 'specificity' and 'not … at a high level of generality.'" *Gordon*
7   *v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *City of Escondido*
8   *v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)). "A constitutional right is clearly
9   established if every reasonable official would have understood that what he is
10   doing violates that right at the time of his conduct." *Sampson v. County of Los*
11   *Angeles by & through L.A. Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012,
12   1018–19 (9th Cir. 2020) (citation and internal quotation marks omitted).

13       To conclude that the right is clearly established, the court need not identify
14   an identical prior action. *See Anderson*, 483 U.S. at 640. However, "existing
15   precedent must have placed the statutory or constitutional question beyond
16   debate." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam)
17   (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

18       Although both the "clearly established right" and "reasonableness"
19   inquiries are questions of law, where there are factual disputes as to the parties'
20   conduct or motives, the case cannot be resolved at summary judgment on
21   qualified immunity grounds. *See Rosenbaum v. City of San Jose*, 107 F.4th 919,
22   924 (9th Cir. 2024) ("Where factual disputes exist as to the objective
23   reasonableness of an officer's conduct, the case cannot be resolved at summary
24   judgment on qualified immunity grounds." (citation omitted)); *Torres v. City of*
25   *Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective
26   reasonableness of an officer's conduct turns on disputed issues of material fact,

27                                              11

28

1
2
3

it is a question of fact best resolved by a jury . . . ; only in the absence of material disputes is it a pure question of law." (citations and internal quotation marks omitted)).

4

### E. Claim One: Delay in Sending Plaintiff to Hospital

5
6
7
8
9
10

In their motion for summary judgment, Defendants argue first that Ware's first claim fails because the facts show no more than a difference of opinion. (ECF No. 37 at 6-7.) However, Ware is not complaining about the treatment he eventually received at hospital but is asserting that the delay in getting him to that treatment constituted deliberate indifference. The cases Defendants cite are therefore not applicable to this claim.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants also argue that the facts do not support a claim of delay. (ECF No. 37 at 7-8.) However, the medical records that Defendants point to do not provide a full picture of the events that occurred in the four-day period from September 18 to September 21. Defendants claim that Ware's "man down" on the evening of September 21 was the first man down, but do not explain why Dr. Naughton ordered blood cultures three days earlier (September 18), or counter Ware's claims that these were taken because he complained of chest pain during dialysis. Defendants do not counter Ware's claims that on the morning of September 21, he was so weak that he had to be brought to dialysis in a wheelchair, and that while there he spoke to Keast about the blood culture results and reported significant pain. Even if this was the first time that Defendants were made aware of Ware's condition, a delay of less than a day could support a valid Eighth Amendment violation. *See Clement*, 298 F.3d at 905–06; *Russell*, 31 F.4th at 743. Taking the facts in the light most favorable to Ware, there is enough in the record to support a valid Eighth Amendment violation based on delayed medical treatment.

27
28

12

1    Defendants next claim that Keast is not a proper defendant because, as a

2  registered nurse, he has "no ability to provide or prescribe immediate medical

3  treatment" and is "not the person who makes outside appointments for offenders"

4  (ECF No. 37 at 8.) Ware claims that on the morning of September 21, he spoke

5  with Keast about the blood culture results and about the significant pain he was

6  experiencing. Ware claims that Keast said he looked fine, that they may need to

7  re-draw the bloods, and that Ware was just trying to get to the hospital for better

8  food. Keast denies that this conversation occurred. However, it appears from

9  Ware's "man down" report that nurses do have the ability to notify doctors of their

10  assessments, who will then make the order. Taking all inferences in Ware's favor,

11  as we must at this stage, a reasonable jury could conclude that Keast's failure to

12  notify a doctor about Ware's symptoms and/or blood culture results constituted

13  deliberate indifference. As such, there is a genuine issue of material fact which

14  makes summary judgment as to Keast inappropriate.  Even though Ware was

15  sent to hospital later that day, as Judge Denney's R&R explains, a reasonable

16  jury could find that a delay of just a few hours constituted deliberate indifference

17  to a serious medical need.

18    Defendants next argue that there is no evidence that Dr. Naughton or Keast

19  ever saw the report with the blood culture results. (ECF No. 37 at 8-9). They point

20  to a notation indicating that the report should be forwarded to Dr. Quigly, the

21  nephrologist, but do not explain who wrote the notation. (*Id.* at 9.) The report

22  states that the ordering physician is Dr. Naughton, suggesting that he would be

23  the first person to receive the report back from LabCorp. Dr. Naughton's

24  declaration does not include any statement as to receiving or not receiving the

25  blood culture reports. (*See* ECF No. 37-6.) Ware claims that both Keast and Dr.

26  Naughton were aware of the reports before the "man down" which resulted in his

27                                          13

28

transfer to hospital. As such, there is a genuine dispute as to whether Dr. Naughton or Keast viewed the blood culture results before Ware's hospital transfer.

Defendants finally argue that Ware's claim fails because he has failed to show that delay caused further injury. However, Ware claims that Dr. Swarts told Ware that he was lucky to be alive because the infection had reached his heart, and asked why the prison had waited to send him to hospital. Defendants assert that "[t]here is no way that a short delay between receiving the blood results and his transfer to the Carson Tahoe Hospital allowed the untreated infection to migrate to his heart." (ECF No. 37 at 9.) However, Defendants neither provide medical records of this first visit to Dr. Swarts that could confirm or refute Ware's claims nor do they provide any evidence discussing the time it takes for infections to spread through the bloodstream to the heart. In addition, Ware claims that he still suffers from chest pain because of damage caused by the delay in sending him to hospital. As such, there remains a genuine dispute as to whether the delay caused further harm.

Because there is a genuine dispute as to several material facts—including the length of delay and the harm caused by the delay—summary judgment is inappropriate on this claim. These factual disputes also mean that this case cannot be resolved at summary judgment on qualified immunity grounds. Because there is also a genuine dispute as to whether and to what extent Dr. Naughton and Keast were involved in the events, the claim will proceed as to both defendants.

//

//

//

14

1

2
3
4
5

6
7
8
9
10
11
12

13
14
15
16

17

18

19
20
21
22
23
24
25
26
27

28

**F. Claim Two: Oral Antibiotics**

Because Defendants have provided evidence sufficient to show that the second claim fails as a matter of law, the Court adopts the R&R's recommendation to grant Defendants' motion for summary judgment on this claim.

Unlike the first claim, Ware's claim that Dr. Swarts recommended oral antibiotics for life is contradicted by medical evidence. The "Progress Note" provided by Defendants shows that Dr. Swarts recommended continuation of IV antibiotics until November 25 and recommended considering prophylactic oral antibiotics after November 25.  (ECF No. 39-4 at 2.) Medical records support Defendants' claim that they administered both sets of antibiotics as recommended. (ECF Nos. 37 at 3-4, 39-4, 39-5.)

Because Defendants have met their burden of showing an absence of genuine dispute of fact on this issue, the claim is dismissed.  The Court adopts the R&R's recommendation to grant Defendants Dr. Naughton, Keast, Sullivan, Richard, and Flores summary judgement on Claim Two.

**III.     APPOINTMENT OF COUNSEL**

**A. REVIEW OF MAGISTRATE JUDGE'S ORDER**

Under LR IB 3–1, 28 U.S.C. § 636(b) and Rule 72, the Court may reconsider a magistrate judge's pre-trial order where the order is timely objected to and clearly erroneous or contrary to law. The Court often reviews objections to magistrate judges' orders *de novo.* S*ee United States v. Reyna-Tapia,* 328 F.3d 1114, 1116 (9th Cir. 2003) ("De novo review of the magistrate judges' findings and recommendations is required if, but *only* if, one or both parties file objections to the findings and recommendations.") (emphasis in original). But "[w]hen a magistrate judge rules on a non-dispositive matter, a district judge may

15

'reconsider' that ruling only if it is 'clearly erroneous or contrary to law.'" *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 804 (9th Cir. 2022) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)). As a motion for appointment of counsel does not appear in the enumerated list of dispositive motions in 28 U.S.C. § 636(b)(1)(A), it is non-dispositive. *See also* LR IB 1-4. Thus, we review Judge Denney's R&R under a "clear error" standard.

## B. LEGAL STANDARD

Generally, a person has no right to counsel in civil actions. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Storseth v. Spellman,* 654 F.2d 1349, 1353 (9th Cir. 1981)). The Court may only appoint counsel for a party proceeding *in forma pauperis* in exceptional circumstances. 28 U.S.C. § 1915(e)(1). *Tilei v. California Department of Corrections and Rehabilitation*, 644 Fed. Appx. 758, 759 (9th Cir. 2016) (citing *Terrell v. Brewer,* 935 F.2d 1015, 1017 (9th Cir. 1991)). In order to determine whether exceptional circumstances exist, the Court must consider "the likelihood of success on the merits as well as the ability of the petitioner to articulate his arguments *pro se* in light of the complexity of the legal issues involved." *Palmer,* 560 F.3d at 970 (citation omitted). Neither of these considerations is dispositive and the Court must examine them together. *Id.* (citing *Wilborn v. Escalderon,* 789 F .2d 1328, 1331 (9th Cir. 1986)).

Courts recognize that appointment of counsel at a jury trial may be justified even if the court declined to appoint counsel earlier in the case. *See Walker v. Price*, 900 F.3d 933, 939-942 (7th Cir. 2018) (district court erred in denying prisoner's pre-trial request for counsel at his jury trial). The assistance of counsel becomes increasingly important as litigation enters its later stages and the tasks become more complex. *Perez v. Fenolgio*, 792 F.3d 768, 785 (7th Cir. 2015) ("Taking depositions, conducting witness examinations, applying the rules of

16

evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out."). "[W]hile a pro se plaintiff may be able to adequately articulate their claims on paper at the pretrial stage, presentation of evidence at trial requires greater knowledge of legal rules and procedures as well as increased technical skills in public speaking and presentation. *Blanco v. Jacoby,* No. 320CV00050ARTCRD, 2023 WL 2238850, at *3 (D. Nev. Feb. 27, 2023)

### C. DISCUSSION

The Court finds that exceptional circumstances exist and grants Plaintiff's motion for appointment of counsel.

In his motion for appointment of counsel, Ware explains that his disabilities—caused by end stage renal disease—impact many major life activities including walking, standing, lifting, drinking, eating, concentrating, thinking, reasoning, and cognitive function. (ECF No. 53 at 1.) He experiences symptoms including: "severe headaches, optical migraines, swelling, angioedema, pitting edema, severe nausea, vomiting, exhaustion, fatigue, weakness, breathing issues, chronic chest pain, heartbeat irregularities, nose bleeds, excessively high exposure to infection, cognitive impairment, sleepiness, vision impairment, decreased vitality, loss of energy, confusion, chronic itching, chronic severe muscle cramps, chronic muscle spasms, ortho-static hypotension, dizziness, fainting, falling, and loss of consciousness." (*Id.* at 1-2.) Ware also states that he suffers from Post Traumatic Stress Disorder. (*Id.* at 2.) Ware further states that he has "an extremely low literacy rate" which makes him fully reliant on "jail house lawyers" who are almost never present. (*Id.* at 3.)

Judge Denney denied the motion based on Ware's ability to adequately articulate himself in his response to Defendants' motion for summary judgment,

1   and based on a finding that Ware was unlikely to succeed on the merits. (ECF
2   No. 58 at 2.)

3       In his motion to reconsider the motion for appointment of counsel, Ware
4   explains that his health has "depleted enormously" and he has had "frequent
5   hospitalizations" which have prevented him from being able to visit the law library
6   to research caselaw. (ECF No. 60 at 1.) Ware claims that he has sent "numerous
7   (sic) requests/kites to medical" so that he can review his medical records but
8   "[d]ue to medical mishaps," has not been able to. (*Id.*)  He further explains that
9   Dr. Swarts—who "was an expert witness"—is now deceased. (*Id.*at 2.) His frequent
10  hospitalizations have prevented him from locating "inmates or nurse
11  professionals who were nearby when these issues took place." (*Id.* at 3.)

12      At this stage in the proceedings, extraordinary circumstances now exist in
13  support of appointing counsel. While Ware adequately represented himself during
14  the initial phases of this case, trying his case to a jury will be a significantly more
15  complex undertaking. Having considered Ware's likelihood of success on the first
16  claim, his health problems, the complexity of issues, and the difficulty that Ware
17  has experienced in accessing his own medical records, the Court finds that
18  exceptional circumstances exist and grants Plaintiff's motion for appointment of
19  counsel. The scope of the appointment shall be for the remainder of this case,
20  including trial if necessary. By referring this case to the Program, the court is not
21  expressing an opinion as to the merits of the case.

22  **IV. REVIEW OF MEDICAL RECORDS**

23      In his motion for an order "to review full medical files in cell," Ware claims
24  that he has had "no" access to his medical files and that NNCC medical staff have
25  denied several kites and delayed review of his medical files. (ECF No. 49 at 4.) In
26  response, Defendants argue that pursuant to prison regulations, inmates are

18

27

28

1    prohibited from possessing medical records in their cells. (ECF No. 51 at 2.)
2    Defendants explain that Ware can review his medical records by filing a kite
3    "stating that the review is for litigation purposes." (ECF No. 51 at 2-3.)

4         Judge Denney denied this motion pursuant to Administrative Regulation
5    639 and advised that "Plaintiff may kite the Warden's office to review his medical
6    records and may take whatever notes he deems appropriate." (ECF No. 52 at 1.)
7    Ware then filed a motion objecting to Judge Denney's order, reiterating his
8    request to review his entire medical records in his cell, including progress notes,
9    consultations, orders, prescriptions, hospital dates and hospital discharge
10   summaries, from 2021 to 2024. (ECF No. 59 at 2.)

11        The Court denies this motion without prejudice. Because the Court has
12   granted Ware's motion for appointment of counsel, the Court notes that pro bono
13   counsel—once identified and appointed—should be able to review assist Ware in
14   reviewing his medical records without the need for in-cell review.

15   **V. CONCLUSION**

16        It is therefore ordered that Defendants' motion for summary judgment (ECF
17   No. 37) is denied as to Plaintiff's first claim (delay in sending Plaintiff to the
18   hospital) and granted as to Plaintiff's second claim (refusal to provide Plaintiff
19   oral antibiotics). Plaintiff's claim of deliberate indifference to a serious medical
20   need based on the delay in sending him to the hospital will proceed against
21   Defendants Keast and Dr. Naughton. Defendants Sullivan, Richard, and Flores
22   are dismissed from this case.

23        It is further ordered that Plaintiff's motion to stay the case (ECF No. 56) is
24   denied as moot.

25        It is further ordered that Plaintiff's motion to review medical records in his
26   cell (ECF No. 49) is denied without prejudice.

27                                          19
28

It is further ordered that Plaintiff's motion for appointment of counsel (ECF No. 60) is granted. This case is referred to the Pro Bono Program adopted in Amended General Order 2019-07 for the purpose of identifying counsel willing to be appointed as pro bono counsel for Plaintiff. It is ordered that the Clerk shall forward this order to the Pro Bono Liaison.

DATED THIS 20th day of September 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

20